**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**IN ADMIRALTY**

CASE NO. ____________________

SEANN ROSEN,

Plaintiff,

v.

M/Y CUPCAKE, her engines, tackle,
tenders, equipment, furniture,
appurtenances, etc., *in rem*,

Defendants.
_______________________________________/

**SEAMAN'S VERIFIED COMPLAINT *IN REM* TO ENFORCE MARITIME LIEN FOR UNSEAWORTHINESS AND MAINTENANCE AND CURE**

Plaintiff, SEANN ROSEN, by and through undersigned counsel, pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Rule C, hereby files this Verified Complaint against the M/Y CUPCAKE, a 2000, 132-foot Motor Yacht built by Westship (Official Number JMP24052), her engines, tackle, tenders, equipment, furniture, appurtenances, etc., *in rem*, and states:

**JURISDICTION, PARTIES AND VENUE**

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Subject matter jurisdiction of this Honorable Court is based upon admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and § 31341 of the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31301-31343, and is brought under the provisions of Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims

(hereinafter the "Supplemental Rules") and Local Admiralty Rule C, as a maritime tort case of damage and injury to a person caused by a vessel in navigation, to foreclose maritime liens for maintenance and cure and unseaworthiness in favor of Plaintiff and encumbering the vessel M/Y CUPCAKE.

2. Jurisdiction is founded on the presence within the District of the M/Y CUPCAKE, which may be arrested as security to enforce a maritime lien in accordance with the provisions of Rule C, as pled in detail below.

3. At all times material to this action, Plaintiff, SEANN ROSEN ("Plaintiff"), was and is a citizen of Duval County, Florida, and is otherwise *sui juris*.

4. Defendant M/Y CUPCAKE was and is a 2000, 132-foot Motor Yacht built by Westship (Official Number JMP24052), currently registered in Jamaica, and is presently moored within the Southern District of Florida, and within the jurisdiction of this Court.

5. Upon information and belief, the Vessel is presently berthed at a marina on the navigable waters of the South Fork New River, Fort Lauderdale, Broward County, Florida, which is within this District.

6. At all material times hereto, Plaintiff was employed as a crew member aboard the M/Y CUPCAKE, and at all material times was a Jones Act seaman pursuant to 28 U.S.C. § 1916 and 46 U.S.C. § 30104, *et seq*. As a seaman pursuant to 28 U.S.C. § 1916, the Plaintiff is not required to give security for costs upon the filing of this action.

7. The instant *in rem* action against the M/Y CUPCAKE is related to an *in personam* action Plaintiff initiated against the Vessel's owners, operators, managers and/or employers, styled *Seann Rosen v. Bruce Craig, CC1969, LLC, Nick Kincaid, and Antigua Investment Group Ltd*.,

Case No. 3:25-cv-122-TJC-LLL, which is currently pending in the United States District Court for the Middle District of Florida. A copy of the operative pleading is attached as an exhibit hereto.

## GENERAL ALLEGATIONS

8. At all times material hereto, Plaintiff was hired and worked as a crewmember on board the vessel M/Y CUPCAKE.

9. At all times material hereto, BRUCE CRAIG, CC1969, LLC, and NICK KINCAID, owned, operated, maintained, or controlled the M/Y CUPCAKE and its appurtenances and equipment, and employed and controlled its crew.[1]

10. At all times material hereto, the registered owner of the M/Y CUPCAKE was CC1969, LLC, and its beneficial owner was BRUCE CRAIG.

11. Defendant, CC1969, LLC, entered into a Seafarers Employment Agreement with Plaintiff for the position of engineer with a start date of March 9, 2023, and an end date of "indefinite." The SEA specifies that Plaintiff "will be employed on the M/Y CUPCAKE."

12. Plaintiff was a "seaman" because he was assigned to work as a crewmember onboard the M/Y CUPCAKE, contributed to M/Y CUPCAKE's function or mission, and he had a substantial connection to the vessel in terms of both the time spent on board and the nature of his work.

13. On or about December 22, 2023, NICK KINCAID, the master of the M/Y CUPCAKE, navigated and docked M/Y CUPCAKE to a functional dock slip at the Falmouth Harbour Marina in Antigua.

---

[1] In the related action pending in the Middle District of Florida, among other claims, Plaintiff has asserted relevant counts against BRUCE CRAIG and CC1969, LLC, for unseaworthiness and maintenance and cure. *See* Second Am. Compl., *Rosen v. Bruce Craig, et. al*, No. 3:25-cv-122-TJC-LLL (M.D. Fla. May 20, 2026), ECF No. 61.

14. The dockmaster for Falmouth Harbour Marina informed NICK KINCAID that the other dock slips at the subject marina were under repair. In addition, it should have been visually apparent to NICK KINCAID that other dock slips were under repair.

15. Despite this actual or constructive knowledge that other dock slips were under repair NICK KINCAID, moved M/Y CUPCAKE from the fully operational slip where it was docked to a dock slip that was under repair.

16. The sole purpose for NICK KINCAID moving M/Y CUPCAKE from the fully functional slip where it was docked to a dock slip that was under repair was the personal convenience of NICK KINCAID and/or BRUCE CRAIG who wanted to depart early the next morning.

17. After moving M/Y CUPCAKE from the fully operational slip where it was docked to a dock slip under repair, NICK KINCAID instructed Plaintiff to get fresh water from the pedestal that was located on the dock slip that was under repair.

18. As instructed by the Vessel's master, Plaintiff exited M/Y CUPCAKE and proceeded to the water/shore power pedestal on the dock slip that was under repair.

19. While performing this task as instructed by the Vessel's master, Plaintiff sustained a severe electrical shock injury while attempting to connect the water hose to the pedestal that was energized.

20. Prior to being shocked, Plaintiff was unaware that the pedestal was energized.

21. Captain KINCAID knew or should have known that the pedestal was energized and/or knew or should have known that inherent dangers existed in connection with the repair work being done to the dock slip; during his discussion with the dockmaster concerning the alternate slip

arrangements, Captain KINCAID was informed about the unsafe conditions at the dock slip, or should have inquired about the safety of using the dockside power/water at the dock slip.

22. As a direct and proximate result of the incident, Plaintiff was severely injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap. Plaintiff also sustained lost wages and loss of earning capacity. The damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

23. Since the date of the incident, Plaintiff is permanently disabled and continues to suffer from injuries sustained in connection with the incident, including but not limited to CRPS, severe psychological trauma, and treatable physical limitations and symptoms which restrict his ability to use his upper extremities and which limit his daily function of living.

24. Shortly after a spinal cord stimulator ("SCS") was installed in Plaintiff's neck/back for the purpose of ameliorating his condition and achieving an improved daily function of living, Plaintiff's employer stopped providing medical treatment (cure) for Plaintiff's physical injuries in Spring of 2025.

25. As to Plaintiff's psychological injuries, Plaintiff is not at maximum medical improvement; Plaintiff continues to receive maintenance and cure for his psychological injuries.

26. As to Plaintiff's physical injuries, records and reports of Dr. Chris Netzel conflict as to whether Plaintiff reached maximum medical improvement, considering the nature of continued care that Dr. Chris Netzel recommended. Specifically, among other things, Dr. Netzel recommended ongoing physical therapy and periodic visits for reprogramming of the SCS; the

determination was self-contradicting and equivocal as it indicated that Plaintiff's physical condition could improve.

27. Several months after Plaintiff's cure for physical symptoms was terminated, Plaintiff's condition began deteriorating. Although the SCS initially provided some relief, Plaintiff was severely restricted in his ability to perform activities of daily living due to his pain and, because he became sedentary in light of his pain, Plaintiff suffered from significantly reduced strength in his upper extremities.

28. In Spring of 2026 Plaintiff informed agents of CC1969 and BRUCE CRAIG that Plaintiff's condition was deteriorating and Plaintiff requested care in light of his progressive restrictions. Despite his requests, Plaintiff was not evaluated by CC1969 or BRUCE CRAIG to determine whether it was appropriate to reinstate cure for Plaintiff's physical injuries.

29. Thus, Plaintiff visited a physician and sought medical treatment that was incurred at his own expense. Ultimately, it was discovered that Plaintiff's SCS was no longer functioning and needed reprogramming; that Plaintiff's activities of daily living were limited; that Plaintiff suffered from objective right-upper-extremity defects, including a reduced range of motion and reduced grip strength which differed between his extremities; and that Plaintiff's symptoms have spread to his left upper extremity, along with cervical radiculopathy and ulnar-nerve findings, among other things.

30. Instead of performing a physical evaluation of Plaintiff to determine if Plaintiff was qualified to receive reinstatement of cure for his physical injuries, CC1969 and BRUCE CRAIG retained a doctor who relied solely on Plaintiff's medical records generated prior to terminating

benefits. Based on his review of records[2], and without speaking with or examining Plaintiff, the retained physician determined that Plaintiff reached maximum medical improvement.

31. In June of 2026, Plaintiff presented CC1969 and BRUCE CRAIG with medical records which conflicted with the notion that Plaintiff reached maximum medical improvement for his physical injuries, hoping that CC1969 and/or BRUCE CRAIG might engage in a good faith effort to evaluate evidence of Plaintiff's present condition for purposes of maintenance and cure. The records and opinions indicate that Plaintiff has not reached maximum medical improvement, noting that Plaintiff requires curative treatment, and Plaintiff's care is intended, in part, to restore loss of function and a return to activities of daily living. To date, Plaintiff's cure has not been reinstated for his physical injuries.

**<u>COUNT I – *IN REM* ACTION FOR MAINTENANCE AND CURE</u>**

Plaintiff re-alleges and re-avers Paragraphs 1 through 31 as if set forth fully herein, and further states that:

32. At all times material to this action, Plaintiff was employed to work as a seaman onboard the M/Y CUPCAKE, which was owned by CC1969 and/or BRUCE CRAIG.

33. "The duty of a shipowner to pay a seaman's maintenance and cure creates a maritime lien of the highest priority." *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1551 (11th Cir. 1990), citing T.J. Schoenbaum, Admiralty and Maritime Law § 5–2 at 160 (1987); *The Osceola*, 189 U.S. 158, 175 (1903) (maintenance and cure are a seaman's right, imposing liability on vessel);

[2] Despite numerous communications over the past several months advising of their persistent failure to perform a reasonable investigation for maintenance and cure, on September 24, 2026, just one day after being presented with a copy of Plaintiff's proposed *in rem* pleading against the M/Y CUPCAKE setting forth factual allegations of their 'investigation', counsel for CC1969, BRUCE CRAIG, and NICK KINCAID sent counsel for Plaintiff a letter advising that their retained physician has reviewed the 2026 records and his opinion remains the same. Furthermore, after maintaining for months that Plaintiff must travel 350 miles to Miami for an in-person evaluation, the letter advises that they will now arrange a maintenance and cure evaluation in the District where Plaintiff resides.

*Fredelos v. Merritt–Chapman & Scott Corp*., 447 F.2d 435, 439–40 (5th Cir.1971) (*per curiam*) (wages and maintenance and cure are maritime liens of the first priority).

34. Where ambiguities or doubts exists as to whether a seaman is entitled to receive maintenance and cure, courts have held that any doubts must be resolved in favor of the seaman. *See Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962); *Flores v. Carnival Cruise Lines*, 47 F.3d 1120, 1123 (11th Cir. 1995); *Baucom v. Sisco Stevedoring, LLC*, 506 F. Supp. 2d 1064, 1072 (S.D. Ala. 2007). "[T]reatment that improves condition by allowing remunerative activity previously precluded by pain does constitute cure." *Kuithe v. Gulf Caribe Maritime, Inc*., 2010 U.S. Dist. LEXIS 89661, *24 (S.D. Ala. 2010).

35. Plaintiff, as a seaman who sustained his injuries in the service of the vessel, is entitled to maintenance and cure until he reaches maximum possible cure, irrespective of whether the injuries were received by negligence or accident. Any doubt as to his entitlement to maintenance and cure must be resolved in his favor.

36. If a seafarer's employer fails to provide or pay the seaman employee maintenance or fails to provide the seaman employee prompt and adequate cure, the seafarer has the right to sue and recover the maintenance and/or cure, including against the M/Y CUPCAKE *in rem*.

37. The seaman has the right to sue and recover compensatory damages for harm resulting in whole or in part from the negligent failure of his or her employer to make provision of maintenance or cure. A simple showing of some negligence on the part of the employer which played any part, even the slightest, in producing harm to the seaman creates a question on the issue of negligence.

38. The seaman has the right to sue and recover even greater damages - notably punitive damages and attorneys' fees - if the failure to provide or pay a seaman maintenance or failure to

provide prompt and adequate cure is willful, arbitrary, capricious, and in callous disregard of the rights of the seaman.

39. As to Plaintiff's physical injuries, the reports of Dr. Chris Netzel conflict as to whether Plaintiff is at maximum medical improvement, considering the nature of continued care that Dr. Chris Netzel recommended.

40. Further, Plaintiff has furnished his employers with notice that he was not at maximum medical improvement together with medical records and medical opinions indicating that he had never reached MMI, and continues to require curative treatment to restore function, yet his employers have refused to undertake any further investigation.

41. As to Plaintiff's psychological injuries, Plaintiff is not at maximum medical improvement.

42. The Vessel, itself or through CC1969, LLC and/or BRUCE CRAIG, ceased providing cure to Plaintiff before Plaintiff reached maximum medical improvement for all physical injuries sustained in the accident.

43. Further, the Vessel, itself or through CC1969 and CRAIG, failed and continue to fail to reimburse Plaintiff for his out-of-pocket medical expenses for his physical injuries.

44. These failures to make provision of prompt and adequate maintenance and cure are not simply negligent.

45. These failures are willful, arbitrary, capricious, and in callous disregard of the rights of the Plaintiff.

46. Further, the M/Y CUPCAKE, itself or through CC1969 and/or BRUCE CRAIG, unreasonably failed to pay or provide Plaintiff with maintenance and cure, which aggravated his condition and caused Plaintiff to suffer additional compensatory damages, including but not

limited to the aggravation of Plaintiff's physical condition, disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss of enjoyment of life, feelings of economic insecurity, as well as lost earnings or earning capacity, medical and hospital expenses in the past and into the future, punitive damages, and attorneys' fees and costs.

47. Plaintiff's lien attached at the time his claim for maintenance and cure arose. "A maritime lien attaches and is perfected by operation of law when the claim arises." *Craddock v. M/Y The Golden Rule*, 110 F. Supp. 3d 1267, 1276 (S.D. Fla. 2015) (citations omitted).

48. Plaintiff's lien attaches to the *in rem* maritime property, the M/Y CUPCAKE, until it is either extinguished by operation of law or executed via the *in rem* legal process available in admiralty. *Id.*; *Minott v. M/Y Brunello*, 891 F.3d 1277 (11th Cir. 2018).

WHEREFORE, Plaintiff demands judgment under the General Maritime Law against the Defendant the M/Y CUPCAKE, her engines, tackle, tenders, equipment, furniture, appurtenances, etc., *in rem*, for the failures to make provision of maintenance and cure, together with any and all compensatory damages, punitive damages, unearned wages, attorneys' fees, statutory interest as permitted, pre- judgment interest as permitted, costs as permitted, and any other relief that this Court deems proper.

**COUNT II — *IN REM* ACTION FOR UNSEAWORTHINESS**

Plaintiff realleges, adopts, and incorporates by reference the allegations in Paragraphs 1 through 31 as though alleged originally herein.

49. "Under admiralty law, an action for unseaworthiness may be commenced by filing an *in rem* action directly against the vessel. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960)." *Nahan v. Pan Am. Grain Mfg. Co., Inc.*, 62 F. Supp. 2d 419, 425 (D.P.R. 1999)

50. At all times material, the vessel M/Y CUPCAKE owed a non-delegable duty to Plaintiff to be seaworthy; that is, in all respects fit for the purpose the vessel was intended, and to have a competent master and crew, of sound judgment, skill and disposition. See *Keen v. Overseas Tankship Corp*., 194 F.2d 515, 517 (2d Cir. 1952) ("It has long been settled that the assured's warranty of his ship's seaworthiness in a maritime policy is broken if the master or the crew are not competent for their duties."). It is well established that liability for unseaworthiness extends not only to physical conditions of a vessel, its appurtenances and its equipment, but also includes operational deficiencies: as explained by the Eleventh Circuit, "[b]ecause the shipowner has a non-delegable duty to provide a competent master and crew, unseaworthiness can be caused by insufficient manning of the vessel or an incompetent crew." *Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp*., 768 F.2d 1558, 1565-66 (11th Cir. 1985) (citing *Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1155 (2d Cir. 1978), *cert. denied*, 440 U.S. 959, (1979)). Inadequate training is another "well known" operational unseaworthy condition. *Brown v. Cliff's Drilling Co*., 638 F. Supp. 1009, 1014 (E.D. Tex. 1986)(stating "[i]t is well known that one creates an unseaworthy vessel by utilizing an understaffed, or ill-trained, crew" and holding defendant liable for creating an unseaworthy condition "by not training, instructing, or supervising" employees). The failure to furnish appropriate protective footwear is yet another. *Webb v. Dresser Indus*.,536 F.2d 603, 606 (5th Cir.1976), cert. denied, 429 U.S. 1121 (1977) (failure to provide proper foot apparel for ice and snow conditions to seaman ordered ashore to pick up supplies is an unseaworthy condition).

51. On or about December 22, 2023, while in the performance of his ordinary duties as a seaman onboard the M/Y CUPCAKE, Plaintiff was severely injured when he was ordered by

Captain KINCAID to connect to the M/Y CUPCAKE to a shoreside waterspout on a dock that was under repair.

52. On the above stated date, the unseaworthiness of the M/Y CUPCAKE was a legal cause of injury and damage to Plaintiff by reason of the following:

a. Failing to have a competent, skilled and properly skilled captain or master onboard the vessel and available to crew members such as Plaintiff;

b. The job methods and procedures were not reasonably fit for their intended purposes as they posed an unsafe method of operation and an unreasonable risk of injury;

c. Providing a crew that was not properly trained and instructed to recognize electrical hazards;

d. Failing to follow sound management practices with the goal of providing the Plaintiff with a safe place to work;

e. Failing to investigate the hazards to crew members and then take the necessary steps to eliminate the hazards, minimize the hazard or warn the Plaintiff of the danger from the hazard, which comprises an improper method of operation;

f. Failing to furnish sufficient or proper equipment for Plaintiff to perform his duties;

g. failing to provide suitable footwear which would have prevented electrocution under the circumstances giving rise to plaintiff's injury;

h. failing to implement and enforce procedures requiring the use of safe footwear while working with electricity;

i. Failing to provide and maintain a safe place to work for Plaintiff; and/or

j. Other such acts of unseaworthiness as discovery or the evidence may show.

53. As a direct and proximate result of the above unseaworthy conditions of the M/Y CUPCAKE, Plaintiff suffered harm, including, without limitation, bodily injury, pain and suffering, disability, disfigurement, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical or nursing care or treatment, loss of

earnings, loss of ability to earn money or aggravation of a previously existing condition. One or more of the losses are permanent or continuing, and Plaintiff will suffer the loss(es) in the future.

WHEREFORE, Plaintiff demands judgment under the General Maritime Law against the Defendant the M/Y CUPCAKE, her engines, tackle, tenders, equipment, furniture, appurtenances, etc., *in rem*, for injuries sustained due to the Vessel's unseaworthiness, together with any and all compensatory damages, statutory interest as permitted, pre- judgment interest as permitted, costs as permitted, and any other relief that this Court deems proper.

**COUNT III – FORECLOSURE OF MARITIME LIENS AGAINST THE M/Y CUPCAKE**

Plaintiff realleges, adopts, and incorporates by reference the allegations in Paragraphs 1 through 53 alleged originally herein.

54. This is an action *in rem* to enforce and foreclose maritime liens against the M/Y CUPCAKE, her engines, tackle, tenders, equipment, furniture, appurtenances, etc., pursuant to the General Maritime Law and Supplemental Admiralty Rule C.

55. As a direct and proximate result of the conditions constituting unseaworthiness giving rise to Plaintiff's injuries, along with the failure to issue Plaintiff maintenance and cure, and the failure to treat Plaintiff's injuries, the Vessel, through her owners, operators, and/or agents, caused injury to Plaintiff while on navigable waters, and Plaintiff is entitled to assert liens against the Vessel for said failures and unseaworthiness as described in Counts I and II above.

56. The amount of Plaintiff's claims in the aggregate exceed Six Million U.S. Dollars ($6,000,000.00), plus interest and costs, which attach to the Vessel in favor of Plaintiff and is enforceable under the provision of 46 U.S.C. § 31341 et seq. with suit *in rem* under Rule C.

57. Pursuant to Supplemental Rule E(5), substitute security may be posted in an amount of up to the value of the Vessel or twice the amount of Plaintiff's claim to secure costs, fees, and

expenses. It is the common practice in this District for substitute security to be posted in an amount up to 150% of the Plaintiff's claim. Upon information and belief, the value of Plaintiff's claims exceed the value of the Vessel.

58. Plaintiff has the right to pursue foreclosure of his liens via arrest of the Vessel, and to seize the Vessel and hold her until Plaintiff's liens (including damages as may be determined by this Court and/or in the action pending against the Vessel's owners/operators which includes claims for maintenance and cure and unseaworthiness, to the extent those claims attach to the Vessel) are satisfied, or until sale of the Vessel is ordered by the Court and such proceeds are used to satisfy Plaintiff's liens, together with interest, costs, and custodial expenses.

WHEREFORE, Plaintiff prays:

A. That a warrant for arrest be issued and a copy of the Verified Complaint be served upon the vessel, *in rem*;

B. That all persons claiming any right, title, or interest in the vessel her engines, tackle, tenders, equipment, furniture, appurtenances, etc., be summoned to appear, file their claim, as owner, and to answer under oath all and singular the matters aforesaid, and that after due proceedings, said Vessel be condemned and sold to pay the demands aforesaid and determined to be owed to Plaintiff, together with all interest, costs, fees and expenses;

C. That the Court recognize a valid and subsisting maritime liens for unseaworthiness and unpaid maintenance and cure against the M/Y CUPCAKE, *in rem*, in favor of Plaintiff, for the highest priority after expenses of justice for *custodia legis*;

D. That all persons, firms and corporations claiming any interest in said vessel who fail to properly file a claim are forever barred and foreclosed of all right or equity of redemption or claim of, in, or to the M/Y CUPCAKE;

E. That this Court shall direct the manner in which actual notice of the commencement of this suit shall be given by Plaintiff to the owner, master, ranking officer or caretaker of said vessel, and to any persons, firms or corporations having interest therein;

F. That the vessel remain under arrest to satisfy Plaintiff's claim;

G. That the Court issue an order instructing the Clerk of Court to accept the Owner's or its Insurers' payment of substitute security, if any, in the lesser amount of twice the value of Plaintiff's claims or the value of the Vessel, to release or refrain the Vessel from arrest; and/or

H. That Plaintiff be awarded any other and further relief as this Court deems just and proper.

Dated: September 25, 2026

Respectfully submitted,

By: /s/ *Brandon P. Volk*
Brandon P. Volk, Esq.
FBN: 1019012
brandon.volk@forthepeople.com
olivia.langston@forthepeople.com
Morgan & Morgan, P.A.
703 Waterford Way #1000,
Miami, FL 33126
Phone: (786) 582-3244
*Counsel for the Plaintiff*

**VERIFICATION**

I, SEANN ROSEN, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that:

1. I am the Plaintiff in the above-styled action and am competent to make this Verification.

2. I have read the foregoing Verified Complaint, and the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

3. The allegations in this Complaint are based on my personal knowledge as the injured party in this action and/or information and documents obtained from my agents or others.

Executed on Sept 25th, 2026.

SEANN ROSEN